## LEVY v. UNITED STATES (two cases).

Circuit Court of Appeals, Eighth Circuit.
October 7, 1929.

Nos. 8363, 8364.

Walden & Andrews, of Joplin, Mo., for plaintiff in error and appellant.

William L. Vandeventer, U. S. Atty., of Kansas City, Mo.

Before KENYON and VAN VALKENBURGH, Circuit Judges.

KENYON, Circuit Judge. There is one appeal only here involved, No. 8364, and we

have considered in connection therewith the assignment of errors filed with the petition for writ of error in cause No. 8363. Therefore, the writ of error in No. 8363 will be dismissed.

Appellant was convicted on an indictment charging him with fraudulently concealing while a bankrupt from his trustee in bankruptcy certain personal property in the nature of general merchandise. He was engaged at the time of bankruptcy in operating two stores, one at Webb City, Mo.; the other at Picher, Okl. December 31, 1925, an involuntary petition in bankruptcy was filed, and on January 26, 1926, appellant was adjudicated a bankrupt. At the first meeting of creditors one Craig was elected trustee. The bankrupt estate eventually paid 14 cents on the dollar. Some of the assignments of error are not argued in this court—hence waived. Demurrer was filed to the indictment, which was overruled by the court. Likewise a motion for bill of particulars.

The assignments of error here urged relate to the following alleged errors: (a) The overruling of the demurrer to the indictment; (b) refusal of the court to direct a verdict of not guilty; (c) action of the court in permitting the district attorney to cross-examine the witness Ervin and to permit inquiry of him as to statements made by him before the grand jury; (d) permitting government to introduce in evidence certain alleged false statements made by appellant to certain creditors.

■ The question raised by the demurrer was that the indictment failed to state all the essential elements and ingredients of the offense, particularly that it was defective in failing to charge that appellant was adjudicated a bankrupt, and in not setting forth the proceedings and facts showing the adjudication of the court in bankruptcy. It is not necessary that the indictment set forth the entire proceedings in the bankruptcy court. The indictment alleges that in the Southwestern division of the Western district of Missouri appellant on the 28th day of January, 1926, was duly and legally adjudicated a bankrupt; that he well knew he had been adjudicated a bankrupt; and that while a bankrupt he fraudulently concealed property, etc. While the indictment does not specifically in terms designate the court in which the bankruptcy petition was filed, taken as a whole it shows that he was adjudged a bankrupt in the Southwestern division of the Western district of Missouri. The petition in bankruptcy was in evidence, and shows the court in which the proceedings took place.

That should be sufficient. These objections to the indictment are frivolous. Whether a bill of particulars should have been granted rested in the sound discretion of the court. There was no abuse of its discretion in refusing to grant the same. Morrow et al. v. United States (C. C. A.) 11 F.(2d) 256; Kanner v. United States (C. C. A.) 21 F.(2d) 285.

Nor was there error in refusing to direct at the close of the evidence a verdict of not guilty upon motion of appellant.

The court submitted to the jury the question of fact as to whether or not on the 3d of February, 1926, and continuously thereafter, appellant knowingly and fraudulently concealed from his trustee goods belonging to his estate. That is the controlling issue of fact the jury determined. There was ample evidence to warrant submitting the question to it.

■■ During the examination of the government's witness Ervin, the court permitted government counsel to ask of said witness leading questions. This witness was apparently contradicting statements he had made at other times—some under oath. The district attorney stated he was taken by surprise, and the court permitted him to ask leading questions as to whether or not Ervin had testified at other times contrary to what he was then testifying. The court is not a mere automaton simply to register rulings on objections to evidence, helpless to thwart perjury, and compelled to witness its triumph. It is within the court's sound discretion to determine whether the circumstances are such as to justify leading questions to the government's witnesses. The court sees the witnesses, as we do not. It is concerned with the development of a truthful narration of occurrences in the interest of justice—not merely to the defendant, but to the government as well.

This court said in Randazzo et al. v. United States, 300 F. 794, 797: "The law on this point presents no particular difficulty. In its simplest statement it is that, when a party calls a witness and is surprised by affirmative evidence given by the witness, which actually aids the adversary party, the party calling the witness may cross-examine him, and show statements made by him which are contrary to the testimony given by him on the witness stand. * * * Here the witness Boreman, called by the United States, to the expressed surprise of counsel who had called him, made statements in his testimony which hurt the government's case and were materially helpful to the defendant Randazzo. In such case, as said in the rule above stated, the govern-

ment had the right, on the ground of surprise, to cross-examine Boreman, and to show that the government, which produced him and in effect vouched for him, was surprised, for that he had theretofore made statements, on which the government relied, which were at variance with the testimony given by the witness when on the stand." See also Hickory v. United States, 151 U. S. 303, 14 S. Ct. 334, 38 L. Ed. 170; St. Clair v. United States, 154 U. S. 134, 14 S. Ct. 1002, 38 L. Ed. 936; Smith v. United States (C. C. A.) 17 F.(2d) 223; Di Carlo v. United States (C. C. A.) 6 F.(2d) 364.

It is apparent the district attorney was taken by surprise by the witness' testimony. That he had testified differently under oath at another time was developed by the leading questions. The witness was working for the appellant at the time. After his testimony before the grand jury he had gone to Webb City, and on the day he testified he had ridden with the defendant from Webb City to the place of holding court, which may account for the change in his testimony. We are satisfied the court exercised a very reasonable and sound discretion in permitting the district attorney to ask leading questions of the witness Ervin.

█ █ The only other question presented is the alleged error of the court in permitting the government to prove certain alleged false financial statements claimed to have been made by appellant to two certain creditors nine or ten months prior to bankruptcy. It is the theory apparently of counsel for appellant that this testimony was inadmissible because it tended to show appellant's commission of crimes independent of the one for which he was on trial. Of course the same acts may show a number of crimes. The mere fact that the evidence in a chain of circumstances may show crimes other than the one for which the party is on trial is not sufficient to exclude the same. In one of these financial statements appellant claimed assets clear of liability of $20,395, and in the other $13,458.34. In one of the statements he claimed his annual sales were $27,000, and in the other $26,234.79. In one he claimed his total indebtedness was $805, and in the other $4,600. He received a large amount of merchandise after these statements, and when nine months later he became a bankrupt his liabilities were scheduled at $33,749.-15, and his assets at $8,305.00. This coupled with the fact that he sold for cash and made a profit, as he testifies, makes difficult to understand the disappearance of a large amount of assets during the period preceding bankruptcy. Without discussing this phase of the matter, however, we see no reason why the statements were not admissible. If true, they were in the nature of admissions as to his solvency nine months before bankruptcy. If false, they would bear on the question of his intent to conceal assets and his general preparation for bankruptcy. Beaux Arts Dresses v. United States (C. C. A.) 9 F.(2d) 531; In re Louis Neuburger, Inc. (C. C. A.) 240 F. 947.

These are all the questions presented to us.

The statute of limitations was urged in the trial court, but it has evidently been abandoned by counsel. At the time of the appointment of the trustee the statute of limitations (30 Stat. 554, § 29(d) was one year for prosecutions of this character, but before that year elapsed Congress extended the time of limitation (11 USCA § 52(d). In view of this, counsel undoubtedly wisely determined that there was no merit in the contention as to the statute of limitations.

We find no errors affecting the substantial rights of appellant, and the judgment is affirmed.